23 Cal.Rptr.3d 26 (2004)
125 Cal.App.4th 678
The PEOPLE, Plaintiff and Respondent,
v.
Matthew Gordon LAMONT, Defendant and Appellant.
No. G032369.
Court of Appeal, Fourth District, Division 3.
December 28, 2004.
Review Granted March 30, 2005.
*27 Edward A. Hoffman, under appointment by the Court of Appeal, Los Angeles, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry J.T. Carlton and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
O'LEARY, J.
After the trial court denied Matthew Gordon Lamont's motion to suppress, he pleaded no contest to possessing a destructive device or explosive on a public street, possessing a destructive device or explosive with the intent to injure or destroy property, transporting a destructive device, and possessing materials with the intent to make a destructive device or explosive. He was sentenced to three years in state prison. On appeal, Lamont challenges the court's ruling on his motion to suppress. We find the court incorrectly determined he did not have grounds to bring the motion and reverse.

FACTS[1]
Long Beach Police Officer Erik Herzog was conducting surveillance of the "Southern Kalifornia Anarchist Alliance" (SKAA) at its headquarters in the City of Long Beach because of reports SKAA might try to disrupt a celebration of Adolf Hitler's birthday being held by the Aryan Nation in Orange County. Herzog saw Lamont standing outside SKAA's headquarters, talking with a small group of people. Lamont is a member of SKAA, and Herzog knew Lamont because he was arrested at a demonstration turned riot the previous year.
Lamont walked towards a parking lot carrying clothes and two white plastic jugs. One jug appeared to be a three-gallon water jug with a spout and the other a one-gallon milk jug, both jugs looked to be empty. Lamont, Maxwell Lucas, and another unidentified male got into a car and left. Herzog followed. They drove to a "hard-core punk concert" at the Unitarian Church in the City of *28 Anaheim. The unidentified male stayed at the church, and Lucas and Lamont drove to a nearby grocery store. Lamont and Lucas went into the store, exited the store, got into the car, and drove towards the presumed location of the Aryan Nation celebration.
Lucas and Lamont stopped at a gas station. Herzog saw the car next to a gas pump, but he could not see what they were doing. Lucas and Lamont left the gas station, and Herzog briefly lost sight of them. When Herzog found them, the car was parked alongside a curb with the passenger door opened slightly. Lucas was sitting in the driver's seat and Lamont was sitting in the back passenger seat. Herzog called the City of La Habra Police Department and asked them to stop the car. Lucas and Lamont drove away.
City of La Habra Police Officer Kim Razey stopped Lucas and Lamont. Lucas was driving and Lamont was sitting in the rear passenger seat. Razey asked Lucas for his driver's license and he complied. Razey told Lucas he pulled him over because there was a strong odor of gasoline coming from the car. Lucas said the gas cap was leaking. Razey asked Lucas and Lamont whether they had ever been arrested or were on parole or probation. They said no. Razey asked them to get out of the car so he could investigate where the gasoline odor was coming from. Two undercover detectives arrived.
Razey asked Lamont and Lucas whether he could search them for safety reasons. Lamont consented to a pat down and Lucas consented to be searched. Razey asked them again whether they had ever been arrested. Lamont said he had been arrested and was on probation, but he did not know whether he was subject to a search and seizure condition.[2] One of the detectives searched Lamont and found three cigarette lighters in his pants pocket. Razey looked inside the car and saw an unopened bottle of Tequila Rose on the floor of the right passenger side of the car. Because Lamont and Lucas were under the age of 21, Razey conducted a full search of the car for contraband. Razey searched the rear passenger portion of the car where Lamont was sitting and found the following: a one gallon jug with flammable liquid; two sponges soaked with flammable liquid, one of which had two candles embedded in it; a pair of rubber gloves; a bandana; anarchist materials; and articles on nazi gatherings.

DISCUSSION
Both parties spend much time discussing whether Lucas's and Lamont's conduct justified the traffic stop, i.e., whether Herzog saw Lucas and Lamont commit Vehicle Code violations and informed the City of La Habra Police Department of the violations or whether Razey smelled gasoline coming from the car before stopping them. However, the district attorney stipulated "there was no reasonable suspicion that justified the vehicle stop." Therefore, we need not get mired in these factual disputes.
In ruling on Lamont's suppression motion, the trial court stated: "The question for the court is whether you can distinguish what happened with ... Lamont from the holding in [People v. Cartwright (1999) 72 Cal.App.4th 1362, 85 Cal.Rptr.2d 788 (Cartwright)], based on the fact that *29 there is a concession by the [district attorney] that there was no probable cause nor reasonable suspicion, or traffic violation, that preceded the stop of the vehicle. [¶] Now, I have read and reread Cartwright, and I do think that Cartwright does apply. And I think that the emphasis in Cartwright is what can a passenger in a vehicle expect in terms of [a] legal obligation on the part of the officer. And I don't see that the court should not consider Cartwright in determining this issue. [¶] So having considered all of the arguments and all of the items that I identified on the record, and in light of the stipulation that has been presented to this court as a factual basis on which the court should rule, the court now denies the motion...." (Italics added.)
In reviewing a lower court's ruling on a motion to suppress evidence, we review "`questions of law ... independently to determine whether the challenged seizure meets constitutional standards of reasonableness.'" (People v. White (2001) 93 Cal.App.4th 1022, 1025, 113 Cal.Rptr.2d 584.) "Pursuant to article I, section 28, of the California Constitution, a trial court may exclude evidence under Penal Code section 1538.5 only if exclusion is mandated by the federal Constitution. [Citation.]" (People v. Banks (1993) 6 Cal.4th 926, 934, 25 Cal.Rptr.2d 524, 863 P.2d 769.)
Lamont argues the trial court erroneously denied his motion to suppress evidence because as a passenger in the vehicle he was seized when Razey illegally stopped the vehicle in violation of his Fourth Amendment rights. We agree.
There is a split of authority as to whether a passenger in a vehicle has a reasonable expectation of privacy[3] and may challenge the legality of a traffic stop. On two occasions, this court has held a passenger is not seized within the meaning of the Fourth Amendment and may not challenge the traffic stop. (People v. Castellon (1999) 76 Cal.App.4th 1369, 1373-1374, 91 Cal.Rptr.2d 204 (Castellon); Cartwright, supra, 72 Cal.App.4th at p. 1369, 85 Cal. Rptr.2d 788.) The Sixth District has held "a passenger is not `lawfully stopped' [citation], seized, or detained [citation] merely because the vehicle in which he or she is riding is stopped for a traffic violation." (People v. Fisher (1995) 38 Cal.App.4th 338, 344, 45 Cal.Rptr.2d 57.)
However, the Fourth District, Division Two, Third District, and Fifth District, have all held a passenger in a vehicle has a reasonable expectation of privacy and may challenge the validity of a traffic stop. (People v. Bell (1996) 43 Cal.App.4th 754, 765, 51 Cal.Rptr.2d 115; People v. Hunt (1990) 225 Cal.App.3d 498, 505, 275 Cal. Rptr. 367; People v. Grant (1990) 217 Cal. App.3d 1451, 1460, 266 Cal.Rptr. 587.) Federal circuit courts have held similarly. (U.S. v. Twilley (9th Cir.2000) 222 F.3d 1092, 1095 (Twilley); U.S. v. Eylicio-Montoya (10th Cir.1995) 70 F.3d 1158, 1164; U.S. v. Kimball (1st Cir.1994) 25 F.3d 1, 5-6; U.S. v. Roberson (5th Cir. 1993) 6 F.3d 1088, 1091; U.S. v. Rusher (4th Cir.1992) 966 F.2d 868, 874, fn. 4.)
In ruling on Lamont's motion to suppress, the trial court relied on Cartwright, where a different panel of this court first announced the rule a passenger in a vehicle has no reasonable expectation of privacy and, therefore, has not been seized *30 within the meaning of the Fourth Amendment. Interpreting the United States Supreme Court case Maryland v. Wilson (1997) 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (Maryland), the Cartwright court expanded the Supreme Court's holding and stated, "In holding that officers are entitled to order passengers out of a car as a matter of course, the [court] recognized that when a traffic stop occurs, `[t]here is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers.' [Citation.] By noting the absence of any objective justification to detain passengers in cars stopped for traffic violations, however, the court obviously did not mean to imply that passengers are routinely subjected to illegal seizures. We believe it was saying passengers are not `detained' as the law uses that term." (Cartwright, supra, 72 Cal.App.4th at p. 1367, 85 Cal.Rptr.2d 788.) In Castellon, we reaffirmed Cartwright without further analysis. We simply noted our previous reliance on Maryland. (Castellon, supra, 76 Cal.App.4th at pp. 1373-1374, 91 Cal.Rptr.2d 204.)
One year after Cartwright, the Ninth Circuit Court of Appeals addressed the issue in Twilley, supra, 222 F.3d at page 1095. Based on our reading of Twilley, we conclude our court's previous interpretation of Maryland was erroneous.
In Twilley, the defendant passenger challenged the search of the car trunk and seizure of packages of cocaine on the grounds the stop of the vehicle was not supported by probable cause. (Twilley, supra, 222 F.3d at p. 1095.) The court stated, "[u]nder the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess `reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity.' [Citations.] Such reasonable suspicion `requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct.' [Citation.]" (Ibid.) The court explained that "[a]s a passenger, [the defendant] `has no reasonable expectation of privacy in a car that would permit [his] Fourth Amendment challenge to a search of the car.' [Citation.] But [the defendant] challenged the initial stop, and `a passenger may challenge a stop of a vehicle on Fourth Amendment grounds even if she has no possessory or ownership interest in the vehicle.' [Citations.] Further, while [the defendant] does not have standing to challenge the search directly, `if the defendant could establish that the initial stop of the car violated the Fourth Amendment, then the evidence that was seized as a result of that stop would be subject to suppression as `fruit of the poisonous tree.''" (Ibid.)
As explained in Twilley, officers may conduct an investigatory stop of a vehicle only if they possess a reasonable suspicion "`the particular person stopped [is guilty] of criminal activity.'" The court aptly noted that when officers stop a vehicle, all occupants of the car are stopped, not just the driver. Although the United States Supreme Court has not expressly held the passenger may challenge the validity of the stop, it has strongly hinted that a traffic stop of a vehicle constitutes a detention of all its occupants, including passengers. (Berkemer v. McCarty (1984) 468 U.S. 420, 436, 104 S.Ct. 3138, 82 L.Ed.2d 317 ["traffic stop significantly curtails the `freedom of action' of the driver and the passengers, if any, of the detained vehicle"]; Colorado v. Bannister (1980) 449 U.S. 1, 4, 101 S.Ct. 42, 66 L.Ed.2d 1, fn. 3 ["There can be no question that the stopping of a vehicle and the detention of its occupants constitute a `seizure' within the *31 meaning of the Fourth Amendment"]; Delaware v. Prouse (1979) 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660, ["stopping an automobile and detaining its occupants constitutes a `seizure'"].) Although the passenger may not be able to challenge a search of the vehicle, he or she may challenge the stop because all of the vehicle's occupants are stopped, not just the driver.
Additionally, both Maryland and Cartwright concerned Vehicle Code violations. In Cartwright, the quote we relied on from Maryland provides, "`There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers.'" (Cartwright, supra, 72 Cal.App.4th at p. 1367, 85 Cal.Rptr.2d 788, italics added.) We cannot say that officers only stop vehicles for Vehicle Code violations. Officers also stop vehicles because they suspect everyone in the vehicle of wrongdoing, as was the case here. Officers may also stop a vehicle because they suspect the passenger of wrongdoing. Obviously, the occupants of a vehicle do not know why they are stopped until an officer tells them.
Therefore, based on Twilley, we believe a traffic stop constitutes at least a momentary seizure of everyone in the car. The freedom of action of the passenger, as well as the driver, is significantly curtailed by an officer's act of making the driver stop the car. Whether a passenger remains detained thereafter depends on whether, under the circumstances, a reasonable person would feel free to leave. Presumably, if the officer is investigating the driver, the passenger is free to walk away. The same cannot be said if the officer immediately approaches and questions the passenger.
We now hold that, at the time of the initial traffic stop, the passenger is seized within the meaning of the Fourth Amendment. Consequently, the passenger can challenge the legality of the traffic stop because the passenger is asserting his or her own legal right to be free from an unlawful seizure. In this case, the court should have allowed Lamont to challenge the legality of the traffic stop and considered the merits of his suppression motion.
Ordinarily, we would remand to the trial court to make a ruling on the suppression motion. However, as we explained above, the district attorney stipulated "there was no reasonable suspicion that justified the vehicle stop." Therefore, the stop violated Lamont's Fourth Amendment rights and all evidence seized as a result of the stop should have been suppressed under the "`fruit of the poisonous tree'" doctrine. (U.S. v. Kimball, supra, 25 F.3d at p. 6; People v. Butler (1988) 202 Cal.App.3d 602, 607, 248 Cal.Rptr. 887.)

DISPOSITION
The judgment is reversed.
I CONCUR: RYLAARSDAM, J.
SILLS, P.J., dissenting:
Today, the majority decides that, on two occasions in 1999, we erred when we held a passenger in a car is not "seized" by an officer's stopping a car driven by another. However, we did not reach that conclusion due to capricious whim. We made that decision based on the then-recent opinion and language of Maryland v. Wilson (1997) 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 and for no other reason.
In Maryland, the United States Supreme Court expanded its holding in Pennsylvania v. Mimms (1977) 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 to apply also to passengers of cars that are stopped. Mimms held that officers have the right to order drivers out of their cars that have been stopped, and Maryland v. *32 Wilson, supra, 519 U.S. at pages 413-414, 117 S.Ct. 882, determined that an officer's need to order passengers out of a stopped car was much greater than the minimal intrusion on the passengers to comply. The Court stopped short of stating that a passenger could be detained for the entire duration of the stop, finding that issue was not presented in the case because the passenger "was subjected to no detention based on the stopping of the car once he had left it...." (Id. at p. 415, fn. 3, 117 S.Ct. 882.)
In the Cartwright[1] and the later Castellon[2] opinions, we had the occasion to visit the issue of whether passengers were "seized" by the simple fact that the cars in which they were riding were stopped. Cartwright held they were not. (Cartwright, supra, 72 Cal.App.4th at p. 1369, 85 Cal.Rptr.2d 788.) Castellon similarly held the passenger was not seized when the car was stopped for expired registration tags, but was seized once he submitted to the officer's order to remain at the car's side. (Castellon, supra, 76 Cal.App.4th at p. 1374, 91 Cal.Rptr.2d 204.) We arrived at these decisions by a methodical review of the United States Supreme Court's developing definition of a seizure, as laid down in California v. Hodari D. (1991) 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690, revisited in Florida v. Bostick (1991) 501 U.S. 429, 434-438, 111 S.Ct. 2382, 115 L.Ed.2d 389, and then expanded in Maryland v. Wilson, supra, 519 U.S. at 414-415, 117 S.Ct. 882.
The majority concludes we were wrong, principally because the Ninth Circuit has opined  using terms already deemed archaic[3]  that a passenger is detained, and has "standing" to contest that detention, simply because he is riding in a car stopped by the police. (See U.S. v. Twilley (2000) 222 F.3d 1092, 1097.) Every other case cited by the majority was decided prior to the Maryland decision, and thus, lacked its wisdom in the analysis. The one exception to that statement is the case that was taken by our Supreme Court for review: People v. Brendlin (2004) 115 Cal.App.4th 206 [8 Cal.Rptr.3d 882], review granted April 14, 2004 [S123133]. In other words, the Cartwright and Castellon opinions remain the sole California authority on the issue, and we should follow them until such time as our Supreme Court tells us otherwise.
As for the effect of the Twilley opinion, we are not bound by lower federal court decisions. (See People v. Camacho (2000) 23 Cal.4th 824, 830, fn. 1, 98 Cal.Rptr.2d 232, 3 P.3d 878; People v. Bradley (1969) 1 Cal.3d 80, 86, 81 Cal.Rptr. 457, 460 P.2d 129 ["although we are bound by decisions of the United States Supreme Court interpreting the federal Constitution [citations], we are not bound by the decisions of the lower federal courts even on federal questions."].) That rule is particularly significant in a situation such as this, where the lower federal court analysis is not persuasive in light of recent United States Supreme Court opinions.
It is quite unfathomable to us why the prosecutor stated there was no "reason" *33 for the officer to stop the car. Herzog's information that the anarchists wanted to stir up some trouble on Hitler's birthday, in combination with the strong smell of petroleum, the large cans or jugs, and miscellaneous clothes would have led anyone (except, perhaps, Inspector Clouseau) to the deduction that these modern day anarchists were mixing up a few jugs of Molotov cocktail sauce. But setting aside that error in prosecutorial judgment, Lamont was not the driver of the car that was stopped. Lucas was. The two "boys" were asked to step out of the car, to permit the officers to locate the source of the dangerous odor of gasoline. There, on the passenger floorboard, was the open bottle of tequila: Neither Lucas nor Lamont was old enough to possess alcohol. At that point, the officers had probable cause to arrest Lamont. At no point did Lamont have "a reasonable expectation to be left alone" from the time the officers approached the car; at least, he lacked an expectation that our society should be willing and able to recognize as legitimate.
In 1982, our electorate passed Proposition 8, eliminating the independent state grounds for exclusion of evidence. (See In re Lance W. (1985) 37 Cal.3d 873, 210 Cal.Rptr. 631, 694 P.2d 744.) One of the aspects of that basis for exclusion was the ability of defendants to vicariously assert the Fourth Amendment rights of others (see e.g., People v. Martin (1955) 45 Cal.2d 755, 290 P.2d 855), just as Lamont is doing with Lucas' rights in this case. We now see Lamont entering through the back door, when Proposition 8 would have barred his admission at the front. (See Lance W., supra, 37 Cal.3d at p. 890, 210 Cal.Rptr. 631, 694 P.2d 744; see also People v. Ooley (1985) 169 Cal.App.3d 197, 201, 215 Cal.Rptr. 112.)
NOTES
[1] Because Lamont pleaded no contest, the facts are taken from the transcript of the preliminary hearing, the transcript of the motion to suppress, and the police reports.
[2] In his opening brief, Lamont states, "Razey's claim that [he] acknowledged being on probation appears to be demonstrably false in light of a subsequent discussion between the [trial] court and the [district attorney], in which the court said to the [district attorney], `... [Lamont] does not have a criminal record. Is that correct?' and the [district attorney] responded, `Yes, that's correct, Your honor.'"
[3] The United States Supreme Court and California Supreme Court have directed all other courts to abandon use of the word "`standing'" in Fourth Amendment discussions. (People v. Ayala (2000) 23 Cal.4th 225, 254, fn. 3, 96 Cal.Rptr.2d 682, 1 P.3d 3 [avoid the term "`standing'" but nature of inquiry remains the same].)
[1] People v. Cartwright (1999) 72 Cal.App.4th 1362, 85 Cal.Rptr.2d 788.
[2] People v. Castellon (1999) 76 Cal.App.4th 1369, 91 Cal.Rptr.2d 204.
[3] The Ninth Circuit, in its U.S. v. Twilley (9th Cir.2000) 222 F.3d 1092 opinion, continues to address the issue as one of "standing" although such nomenclature has been replaced with a substantive analysis of whether the individual has a reasonable expectation of privacy in the place or thing searched. (See Minnesota v. Carter (1998) 525 U.S. 83, 87-88, 119 S.Ct. 469, 142 L.Ed.2d 373; People v. Ayala (2000) 23 Cal.4th 225, 254, fn. 3, 96 Cal.Rptr.2d 682, 1 P.3d 3.)