**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JOSEPH CASERES,
        *Defendant-Appellant.*

No. 06-50546

D.C. No.
CR-02-00854-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
November 5, 2007—Pasadena, California

Filed July 21, 2008

Before: Myron H. Bright,* Harry Pregerson, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Pregerson

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

Sean Kennedy, Federal Public Defender; Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

George S. Cardona, United States Attorney; Thomas P. O'Brien, Assistant United States Attorney, Chief, Criminal Division; Shawn J. Nelson, Special Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

## OPINION

PREGERSON, Circuit Judge:

Joseph Caseres ("Caseres") appeals the district court's denial of his motion to suppress evidence that was discovered during a warrantless search of his car. After the district court denied the motion to suppress, Caseres entered a conditional guilty plea to a violation of 18 U.S.C. § 922(g)(1), which prohibits felons from possessing ammunition. We reverse the district court's denial of the motion to suppress, and we remand for further proceedings.

## JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review de novo the district court's ruling denial of a motion to suppress as to questions of law and mixed questions of law and fact. *United States v. Smith*, 389 F.3d 944, 950 (9th Cir. 2004) (per curiam), *cert. denied*, 544 U.S. 956 (2005). Factual findings are reviewed for clear error. *Id.*

## FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 2005, Lieutenant Roger Murphy ("Lt. Murphy") was patrolling the City of Los Angeles in an unmarked police car. He was accompanied by a ride-along passenger, Erica Czpull ("Czpull"). Around 9:45 p.m., Lt. Murphy observed Caseres driving on Second Street. Lt. Murphy noted that Caseres turned from westbound Second Street to northbound Mesa Street without signaling, which Lt. Murphy believed to be a violation of California Vehicle Code § 22108. He also noted that Caseres's front passenger compartment windows appeared to be tinted in violation of California Vehicle Code § 26708(a)(1).

Lt. Murphy followed Caseres's car. He requested a warrant check from dispatch. While Lt. Murphy waited for the results, Caseres turned down a number of side streets and Lt. Murphy lost sight of his car. Then, as Lt. Murphy was driving westbound on O'Farrell Street, he passed Caseres heading eastbound on the same street. Caseres claims that he did not recognize Lt. Murphy's unmarked patrol car as a police vehicle when it drove past him, heading in the opposite direction. At no time did Lt. Murphy activate his emergency flashing lights or sirens. He gave no indication to Caseres that he wanted to effectuate a traffic stop.

Caseres parked his car in front of 443 O'Farrell Street, two houses away from his residence at 455 O'Farrell Street. Caseres immediately exited his car and walked quickly toward his home. Lt. Murphy then made a three-point turn on O'Farrell Street and pulled his unmarked patrol car behind Caseres's unoccupied car.

Lt. Murphy caught up with Caseres on a residential front lawn. He was wearing a police uniform and identified himself as a police officer. He ordered Caseres to stop. Caseres continued to move toward his residence, telling Lt. Murphy, "Fuck you, I'm home." Lt. Murphy called for back-up assis-

tance and "moved quickly to close the distance between [Caseres] and [himself]."

When he reached Caseres again, Lt. Murphy spoke with him, trying to "buy time" until the back-up police officers arrived. According to Lt. Murphy, Caseres threatened him, saying, "I'm gonna kick your fuckin ass." Lt. Murphy then told Caseres that he was placing him under arrest. Caseres shook his fists at Lt. Murphy, who attempted to spray Caseres with mace. Caseres turned and ran. Lt. Murphy pursued him on foot.

Caseres ran west on O'Farrell Street, entered the alley east of Pacific Avenue, and then ran south. When he reached Santa Cruz Street, Caseres ran east and entered the alley west of Mesa Street. He ran south and entered the alley south of Santa Cruz Street. Then, he ran back westward. Caseres finally surrendered from exhaustion in an alley north of Santa Cruz Street. Lt. Murphy arrested him at that location for violations of California Penal Code § 69 (Threatening a Police Officer) and California Penal Code § 148 (Resisting or Delaying a Police Officer). Caseres was never cited for any violation of the California Vehicle Code.

After arresting Caseres, Lt. Murphy returned to Caseres's car, which was parked a block and a half away from the location where Caseres had been apprehended and arrested. The police officers, who had responded to Lt. Murphy's call for assistance, had arrived at the scene. Lt. Murphy ordered the police officers to search the passenger compartment of Caseres's car, despite not having probable cause to believe the search would uncover evidence of a crime. According to the district court, the search was not ordered until "well after" Caseres had been taken into custody.

As a result of the search, the police officers seized a gun and thirteen rounds of ammunition, which were found underneath the driver's seat of Caseres's car. Because Caseres had

been previously convicted of a felony, he was charged with violating 18 U.S.C. § 922(g)(1), which prohibits felons from possessing ammunition.[1]

Caseres filed a motion to suppress the gun and the ammunition as the fruit of an unconstitutional search. After an evidentiary hearing, the district court denied Caseres's motion to suppress, holding that the search was constitutional as a search incident to a valid arrest and, alternatively, as an inventory search.

On June 19, 2006, Caseres entered a conditional guilty plea, pursuant to a written agreement, in which he expressly reserved the right to appeal the adverse ruling on his motion to suppress. Caseres was sentenced to thirty months imprisonment, three years supervised release, and a special assessment of $100. Caseres is currently in custody serving the sentence imposed in this case. His projected release date is October 21, 2008.

## DISCUSSION

We must decide whether Lt. Murphy had a reasonable basis to detain Caseres, and whether the warrantless search of the passenger compartment of Caseres's car was constitutional as a search incident to a valid arrest, an inventory search, or a parole search.

## I. CASERES'S DETENTION WAS LAWFUL

Caseres argues that the gun and ammunition must be suppressed because they were obtained as a result of an unlawful

---

[1]The government did not charge Caseres with being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1), because of the difficulty in proving that the recovered Lorcin 9mm gun had traveled through interstate commerce. Lorcin firearms are apparently manufactured in Southern California.

detention. "The Fourth Amendment allows government officials to conduct an investigatory stop of a vehicle only upon a showing of reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (internal quotation omitted). The government maintains that the detention was justified based upon three grounds: (1) Caseres did not signal before making a right turn, (2) Caseres's front windows appeared to be tinted, and (3) Caseres threatened Lt. Murphy. The district court upheld the detention based on Caseres's failure to signal his right turn.

We are skeptical that either of the government's first two grounds could justify a detention in this case. Under California law, a driver is required to signal a right turn only "in the event any other vehicle *may be affected by the movement*." Cal. Veh. Code § 22107 (emphasis added); *see also People v. Cartwright*, 85 Cal. Rptr. 2d 788, 791 n.6 (Cal. App. 1999), *abrogated by People v. Lamont*, 23 Cal. Rptr. 3d 26 (Cal. App. 2004).

Here, there is insufficient evidence in the record to find that any other vehicles would have been affected by Caseres's turn, so the district court likely erred in holding that Caseres could be detained based solely on his failure to signal.

Similarly, even if Lt. Murphy had noticed that Caseres's windows were tinted, he would have had no way of knowing that the tint was not factory-installed, legally tinted safety glass. *See People v. Butler*, 248 Cal. Rptr. 887, 890 (Cal. App. 1998) ("We disagree with the People's suggestion that seeing someone lawfully driving with tinted glass raises a reasonable suspicion of illegality such that a reasonable inquiry is justified. Without additional articulable facts suggesting that the tinted glass is illegal, the detention rests upon the type of speculation which may not properly support an investigative stop.").[2] Therefore, neither Casere's failure to signal nor the tint on his windows appears to justify a traffic stop.

---

[2]Not only was Lt. Murphy's suspicion without the objective basis we require, it was also incorrect. Expert testimony at the suppression hearing revealed that Caseres's front windows were not, in fact, illegally tinted.

Here, however, Caseres was not actually "detained" until after he threatened to physically assault Lt. Murphy.[3]

[1] A Fourth Amendment seizure occurs only when an officer intentionally applies physical restraint of a suspect, *California v. Hodari D.*, 499 U.S. 621, 624 (1991), or initiates a show of authority to which a reasonable innocent person would feel compelled to submit, and to which the suspect does submit for reasons that are solely related to the official show of authority, *Florida v. Bostick*, 501 U.S. 429, 436-37 (1991).

[2] Here, the government concedes that Lt. Murphy initiated a show of authority, to which a reasonable person would feel compelled to submit, when he confronted Caseres on the residential lawn, ordered him to stop, and began to question him. This detention, if successful, would likely have been unconstitutional because Lt. Murphy did not have a reasonable basis for stopping Caseres for any traffic violation. Nonetheless, the record indicates that Caseres did not in fact submit to Lt. Murphy's authority at that time. Instead, Caseres continued to walk toward his home and then threatened to fight Lt. Murphy, saying "I'm gonna kick your fuckin ass." It was not until Caseres threatened to fight Lt. Murphy, which in and of itself provided a valid basis for arrest under California Penal Code § 69,[4] that Lt. Murphy attempted to arrest Caseres. Thus, we conclude that the crime committed in Lt. Murphy's presence — namely, Threatening a Police Officer, California Penal Code § 69 — served as a valid basis for the subsequent arrest of Caseres.

---

[3]The district court did not justify the detention on this basis, relying instead on the purported turn signal violation as the basis for Caseres's detention.

[4]The district court specifically found that probable cause existed to arrest Caseres for a violation of Cal. Penal Code § 69, Threatening a Police Officer.

II. THE SEARCH OF CASERES'S CAR WAS UNLAWFUL

We must next determine whether the search of the passenger compartment of Caseres's car was constitutional.

[3] The Fourth Amendment guarantees the right of citizens to be free from unreasonable governmental searches. U.S. Const. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968). "[S]ubject only to a few specifically established and well-delineated exceptions," a search is presumed to be unreasonable under the Fourth Amendment if it is not supported by probable cause and conducted pursuant to a valid search warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967). Although automobiles, due to their inherent mobility, can frequently be searched without a warrant, the search must be supported by probable cause unless some other Fourth Amendment exception applies. *See Chambers v. Maroney*, 399 U.S. 42, 51 (1970).

In this case, the police officers searched Caseres's vehicle without probable cause. The district court held that the vehicle search was a valid search incident to arrest under *New York v. Belton*, 453 U.S. 454 (1981), *Thornton v. United States*, 541 U.S. 615 (2004), and *United States v. Robinson*, 414 U.S. 218 (1973), and, alternatively, that the police could have conducted an inventory search of the vehicle. On appeal, the government also argues that the search of Caseres's car was a valid parole search.

A. SEARCH INCIDENT TO ARREST

[4] The district court improperly held that the search of Caseres's car was constitutionally permissible as a search incident to arrest. The record clearly indicates that the search of the car was conducted a substantial time after Caseres had been arrested and handcuffed at a location a full block and a half away from the car. For these reasons, we conclude that

the search of Caseres's car was characterized by neither the spatial nor the temporal proximity to the place and time of the arrest required to constitute a valid search incident to arrest.

Searches incident to arrest are exempted from the warrant and probable cause requirements of the Fourth Amendment. *Robinson*, 414 U.S. at 235. Such searches are justified as a means to find weapons the arrestee might use or evidence the arrestee might conceal or destroy. *Chimel v. California*, 395 U.S. 752, 762-63 (1969) (striking down the search of an arrestee's entire house as beyond the scope of a search incident to arrest). Accordingly, the permissible scope of a search incident to arrest is limited to the area within the arrestee's immediate control — "the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]." *Id.* at 763.

In *New York v. Belton*, the Supreme Court attempted to set forth a "workable rule" for arrests of vehicle occupants. 453 U.S. at 460. The Court held that, because the vehicle's entire passenger compartment is "in fact generally, even if not inevitably," within the arrestee's immediate control, a search of the entire passenger compartment is justified in all such cases. *Id.*[5]

---

[5]Caseres urges us to reexamine the Supreme Court's holding in *Belton* in light of its policy implications. *Belton* has been sharply criticized. *See, e.g.*, *Thorton*, 541 U.S. at 624 (O'Connor, J., concurring in part) (noting that "lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel* . . . . That erosion is a direct consequence of *Belton*'s shaky foundation."); *id.* at 625 (Scalia, J., concurring) (expressing dissatisfaction with the majority's opinion, which "stretches [the *Belton* doctrine] beyond its breaking point"); *Belton*, 453 U.S. at 463-64 (Brennan, J., dissenting, joined by Marshall, J.) (fearing that *Belton* "may signal a wholesale retreat from our carefully developed search-incident-to-arrest analysis" by "formulating an arbitrary 'bright-line' rule . . . that fails to reflect *Chimel*'s underlying policy justifications"); *United States v. McLaughlin*, 170 F.3d 889, 894 (9th Cir. 1999) (Trott, J., concurring) ("[I]n our search for clarity, we have now

However, if the defendant was not arrested while still inside the vehicle, then he must be a "recent occupant" of the vehicle for a search of the vehicle incident to his arrest to be constitutional. *Thornton*, 541 U.S. 615.

Issues of spatial proximity are important to determining whether the arrestee can be considered a "recent occupant" of the vehicle. In *Thornton*, the case was clear. The arrestee was standing next to the vehicle when arrested, and he conceded that he was in "close proximity, both temporally and spatially" to the vehicle when approached by police. 541 U.S. at 622 n.2. Given these facts, the *Thornton* Court expressly declined to decide whether the arrestee must be within "reaching distance of the vehicle," *id.*, but acknowledged that "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of arrest and search," *id.* at 622. Since *Thornton*, federal and state courts have been sharply divided over what distance constitutes sufficient spatial proximity between the arrestee and the vehicle for the arrestee to be considered a recent occupant, thereby making the vehicular search incident to arrest constitutional.[6]

_____

abandoned our constitutional moorings and floated to a place where the law approves of purely exploratory searches of vehicles during which officers with no definite objective or reason for the search are allowed to rummage around in a car to see what they might find."). Although we agree that the effect of *Belton* is broader than its stated rationale, we are bound by Supreme Court precedent, *see Agostini v. Felton*, 521 U.S. 203, 237 (1997), and thus are compelled to adhere to *Belton*. The Supreme Court has recently granted certiorari in *Arizona v. Gant*, 162 P.3d 640 (Ariz. 2007), *cert. granted*, 128 S. Ct. 1443 (Feb. 25, 2008 (No. 07-542), and may choose to reconsider *Belton*'s rationale. Because we find the search unconstitutional even under *Belton* and *Thornton*, we do not believe the Court's decision in *Gant* would affect the outcome of this case.

[6]*Compare United States v. Green*, 324 F.3d 375 (5th Cir. 2003) (declining to apply *Belton* where arrestee was 6 to 10 feet from vehicle), *and United States v. Edwards*, 242 F.3d 928 (10th Cir. 2001) (declining to apply *Belton* where arrestee was 100 to 150 feet from vehicle), *and United States v. Strahan*, 984 F.2d 155 (6th Cir. 1993) (declining to apply *Belton*

In this case, the district court decided that Caseres was a "recent occupant" of his vehicle under *Thornton* after concluding that the factual circumstances in this case were "almost identical" to those in *United States v. Osife*, 398 F.3d 1143 (9th Cir. 2005), in which this court upheld a vehicular search incident to arrest where the arrestee was reentering the vehicle at the time of his arrest. The district court found *Osife* controlling and thus concluded that the search of Caseres's car was a valid search incident to arrest because Caseres was a recent occupant of the vehicle.

This was error. The facts of this case are markedly different from those in *Osife*. In *Osife*, the arrestee "was still standing next to the open door of his truck" when police arrested him. 398 F.3d at 1144. Because the arrestee did not contest this finding, the *Osife* panel refrained from "decid[ing] how far away from the vehicle the suspect can move before he ceases

where arrestee was roughly 30 feet from vehicle), *and United States v. Fafowora*, 865 F.2d 360, 361 (D.C. Cir. 1989) (declining to apply *Belton* where arrestee was roughly "one car length away" from vehicle), *and State v. Dean*, 76 P.3d 429 (Ariz. 2003) (declining to apply *Belton* where arrestee was inside attic of house and vehicle parked outside), *and State v. Robb*, 605 N.W.2d 96 (Minn. 2000) (declining to apply *Belton* where arrestee was standing by lake and vehicle parked in adjacent lot), *and Ferell v. State*, 649 So. 2d 831, 833 (Miss. 1995) (declining to apply *Belton* where arrestee was within reaching distance of vehicle but was handcuffed), *and State v. Rathbun*, 101 P.3d 119 (Wash. Ct. App. 2004) (declining to apply *Belton* where arrestee was standing next to vehicle when approached and was 40 and 60 feet from vehicle when arrested), *with United States v. Riedesel*, 987 F.2d 1383 (8th Cir. 1993) (applying *Belton* where arrestee was a block from vehicle), *United States v. Arango*, 879 F.2d 1501 (7th Cir. 1989) (applying *Belton* where arrestee was one block from vehicle), *and Rainey v. Commonwealth*, 197 S.W.3d 89 (Ky. 2006) (applying *Belton* where arrestee was 50 feet from vehicle), *cert. denied*, 127 S. Ct. 1005 (2007), *and Penman v. Commonwealth*, 194 S.W.3d 237 (Ky. 2006) (applying *Belton* where arrestee was inside vehicle when approached and one block from vehicle when arrested), *and Black v. State*, 810 N.E.2d 713 (Ind. 2004) (applying *Belton* where arrestee was inside mechanic shop and vehicle parked outside).

to be a 'recent occupant.' " *Id.* at 1148, n.4. Unlike the arrestee in *Osife*, Caseres was handcuffed and arrested a full block and a half away from his car.

Given the distance between Caseres and his car at the time of the arrest, we hold that the search of his car was not a valid search incident to arrest.[7] While we recognize the importance of providing consistent and workable rules to guide law enforcement officers, we cannot grant the police an automatic entitlement to search an arrestee's vehicle regardless of its distance from the place of the arrest. Permitting police to conduct broad investigative or rummaging searches following an arrest, irrespective of the exigencies, effectively makes the Fourth Amendment dead letter. Accordingly, we conclude that Caseres's arrest was not spatially related to the search of his vehicle and therefore the search cannot be justified under the search incident to arrest exception.

This holding accords with the twin rationales for the search incident to arrest exception: finding weapons and preserving evidence. *See Chimel*, 395 U.S. at 762-63 (rationalizing the search incident to arrest doctrine based on safety and preservation of evidence grounds); *Belton*, 453 U.S. at 460 n.3 (emphasizing that the holding "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrest" but rather simply "determines the meaning of *Chimel*'s principles in this particular and problematic [vehicular] context").

---

[7]The government asserts that Caseres should not be rewarded for fleeing from Lt. Murphy by having the evidence recovered from his car deemed inadmissible as a result. Although the concern may be valid, it is not implicated in this case. Here, the attempted detention of Caseres did not occur until after he had parked, exited his car, and was walking through a yard to his residence — which was two houses down the street. As such, Caseres was already a substantial distance from his vehicle when he fled. Before arresting Caseres, Lt. Murphy remarked on his need to "move[ ] quickly" to "close the distance" between him and Caseres after he had parked his patrol car.

Caseres was the only person arrested. After surrendering himself to the police, he was handcuffed and taken into custody a full block and a half from his car. Several armed police officers were present. Under the circumstances, there was no danger that Caseres could have used any weapons in the car or could have destroyed any evidence inside the car, unless he "possessed of the skill of Houdini and the strength of Hercules." *Thornton*, 541 U.S. at 626 (Scalia, J., concurring); *see also United States v. Vasey*, 834 F.2d 782, 787 (9th Cir. 1987) ("*Chimel* does not allow the officers to presume that an arrestee is superhuman.").[8]

The search also falls outside of *Belton*'s bright-line rule because the government failed to show that the search was conducted contemporaneously with the arrest. Under *Belton*, a search incident to arrest must also be "contemporaneous" with the arrest, 453 U.S. at 457, because the "justifications [for a search incident to arrest] are absent where a search is remote in time . . . from the arrest," *Chimel*, 395 U.S. at 764.

[5] In the Ninth Circuit, we have required, at the very least, that the search be "roughly contemporaneous with the arrest" to be truly incidental to arrest. *United States v. Smith*, 389

---

[8]Caseres maintains that the vehicular search incident to arrest was constitutionally invalid because there was no reason to believe that evidence might be found in the car that was relevant to the crimes for which Caseres was arrested — violations of California Penal Code § 69 (Threatening a Police Officer) and California Penal Code § 148 (Resisting or Delaying a Police Officer). The Supreme Court recently granted certiorari to address the question of whether law enforcement officers must demonstrate a need to preserve evidence related to the crime of conviction to justify a warrantless vehicular search incident to arrest. *See Arizona v. Gant*, Sup. Ct. No. 07-542; *see also Arizona v. Gant*, 162 P.3d 640 (Ariz. 2007). As the law stands now, Caseres's argument is squarely foreclosed by this court's decision in *Osife*, in which we held that the validity of a vehicular search incident to arrest does *not* depend upon whether evidence of a crime will be found inside the vehicle. 398 F.3d at 1146-47.

F.3d 944, 951 (9th Cir. 2004) (per curiam). Yet, admittedly, our circuit's jurisprudence fails to provide a clear rule for when the temporal proximity between an arrest and a vehicular search incident to arrest is sufficient. We have sometimes relied on the number of minutes that passed between the arrest and the search. *See United States v. Fleming*, 677 F.2d 602 (7th Cir. 1982) (holding search that occurred within five minutes of arrest was contemporaneous with arrest), *cited with approval by United States v. Turner*, 926 F.2d 883, 887-88 (9th Cir. 1991); *United States v. Ramos-Oseguera*, 120 F.3d 1028, 1036 (9th Cir. 1997) (holding search was not incident to arrest where it occurred "after the car was moved, the defendants were inside the police station, and the police decided to have the car towed"), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000), *overruled on other grounds by United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc); *United States v. Hudson*, 100 F.3d 1409, 1413 (9th Cir. 1996) (holding three-minute delay satisfied contemporaneous requirement for a non-vehicular search incident to arrest). In other cases, we have relied on a more impressionistic sense of the flow of events that begins with the arrest and ends with the search. *See United States v. McLaughlin*, 170 F.3d 889, 891 (9th Cir. 1999) (upholding search of car five minutes after defendant taken away because it was part of a "continuous series of events closely connected in time to the arrest"). More recently, this court explained that the relevant focus is "not strictly on the timing of the search but its relationship to (and reasonableness in light of) the circumstances of the arrest." *Smith*, 389 F.3d at 951 (citing *Hudson*, 100 F.3d at 1419). Given our reliance on these shifting standards, we have previously noted that "what is 'contemporaneous' is in eye of the beholder . . . ." *Id.* at 954 (Wardlaw, J., concurring); *see also McLaughlin*, 170 F.3d at 895 (Trott, J., concurring) (" '[W]ell, thirty minutes is too long, but five minutes is okay and you can delay if you are filling out paperwork but not if you are interrogating or transporting the defendant.' So much for bright lines.").

On the record before us, we can easily conclude that the search of Caseres's car was not roughly contemporaneous with his arrest. Contrary to the government's repeated assertion, Caseres's car was not searched "shortly after" his arrest. Instead, the chain of events that occurred between Caseres's arrest and the search of his car strongly supports the district court's conclusion that the search occurred "well after" Caseres's arrest.

Caseres was taken into custody by Lt. Murphy after surrendering from exhaustion in an alley north of Santa Cruz Street. He was immediately placed in handcuffs. After arresting Caseres, Lt. Murphy questioned Caseres regarding his parole status.

While this was occurring, Officer Dan Robbins ("Officer Robbins") arrived at Caseres's car, which was parked on O'Farrell Street — a block and a half away from the arrest point. Officer Robbins did not search Caseres's car at this time; instead, he got into Lt. Murphy's patrol car, which contained the ride-along passenger, Erica Czpull, and drove the patrol car to the location where the arrest had occurred.

Upon arrival at the arrest location, Officer Robbins got out of the patrol car to meet Lt. Murphy. Czpull waited inside the patrol car for some period of time. When Lt. Murphy returned to the patrol car, he drove himself and Czpull back to the location of Caseres's car. Lt. Murphy met several police officers there, and only then did Lt. Murphy order the police officers to search Caseres's car without probable cause.

[6] It is unclear precisely how much time passed between Caseres's arrest and the search of Caseres's car, during which time the police traveled back and forth between the two locations, but the record certainly supports the district court's finding that the search did not begin until "well after [Caseres] was placed under arrest." The arrest and the search were separated not only by substantial time, but also by a

string of intervening events that signaled that the exigencies of the situation had dissipated. The police took time to question Caseres, to converse with one another, and to transport themselves back and forth between the arrest site and the vehicle's location, all in the time between Caseres's arrest and the search of his car. We therefore conclude that the search of Caseres's car was too far removed in time from the arrest to be considered as truly incidental to Caseres's arrest.

## B. INVENTORY SEARCH

**[7]** The district court held, alternatively, that the search was constitutional because it was a valid inventory search. We reverse and hold that the police lacked the authority to impound and conduct an inventory search of Caseres's car — which was lawfully parked on the street two houses away from his residence — because doing so did not serve any community caretaking purpose.

Under California Vehicle Code § 22651(h)(1), the police may impound a vehicle "[w]hen an officer arrests any person driving or in control of a vehicle for an alleged offense" and takes that person into custody. A lawfully impounded vehicle may be searched for the purpose of determining its condition and contents at the time of impounding. *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). Anything observed in the vehicle during the inventory search is admissible against the defendant. *Id.* Such warrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures that are aimed at protecting the owner's property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property. *Id.* at 372-74. Additionally, a vehicle can be impounded under § 22651(h)(1) only if impoundment serves some "community caretaking function." *See People v. Williams*, 52 Cal. Rptr. 3d 162, 165-67 (2006) (holding that an inventory search of a vehicle is unconstitutional where the vehicle was legally parked on the street outside the arrestee's residence).

**[8]** Whether an impoundment is warranted under the community caretaking doctrine depends on the location of the vehicle and the police officers's duty to prevent it from creating a hazard to other drivers or from being a target for vandalism or theft. *See United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005) ("Once the arrest [is] made, the doctrine allow[s] law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism."); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 n.4 (9th Cir. 1993) (holding that the impoundment of an arrestee's car from a private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking doctrine).

**[9]** There was no community caretaking rationale for the impoundment of Caseres's car. The car was legally parked at the curb of a residential street two houses away from Caseres's home. The possibility that the vehicle would be stolen, broken into, or vandalized was no greater than if the police had not arrested Caseres as he returned home. The government has not presented any evidence that the car was blocking a driveway or crosswalk, or that it posed a hazard or impediment to other traffic. Accordingly, we conclude that there was no lawful basis to impound the vehicle and therefore the subsequent inventory search was unconstitutional.

Finally, the government notes that Caseres was driving on a suspended license and cites *People v. Benites*, 11 Cal. Rptr. 2d 512 (Ct. App. 1992), for the proposition that impounding an unlicensed driver's car to prevent its continued unlawful operation is itself a sufficient community caretaking function. First, we doubt that *Benites* stands for such a proposition — in that case, the vehicle was five miles from any town on "a dark, lonely and isolated stretch of road" where it "could be vandalized," so other community caretaking factors applied. *Id.* at 523; *see also Miranda v. City of Cornelius*, 429 F.3d 858, 866 (9th Cir. 2005) (noting that the rationale of impounding vehicles merely to deter future illegal activity "is

incompatible with the principles of the community caretaking doctrine"). Moreover, even if preventing future unlawful operation were a sufficient community caretaking function in and of itself, it would obviously not apply to cases like this one, where the unlicensed driver was taken into custody. Here, unlike in *Benites*, there was no fear that Caseres "would simply drive off once [the police officer] left." 11 Cal. Rptr. 2d at 523.

The government failed to establish a community caretaking function for the impoundment of Caseres's car. It therefore failed to establish the constitutional reasonableness of the seizure and subsequent inventory search.

## C.   PAROLE SEARCH

Finally, we disagree with the government that the search of Caseres's car can be justified after the fact as a parole search.

**[10]** Under California law, a subset of inmates who are eligible for release on state parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." Cal. Pen. Code § 3067(a).

**[11]** The § 3067(a) search condition is limited in its application, however. The search condition validates a search only if the police had advance knowledge that the search condition applied before they conducted the search. *See, e.g.*, *Samson v. California*, 547 U.S. 843, 856 n.5 (2006) (noting that "[u]nder California precedent . . . an officer would not act reasonably in conducting a suspicionless search *absent knowledge* that the person stopped for the search is a parolee.") (emphasis added); *Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir. 2005) ("[P]olice officers cannot retroactively justify a suspicionless search . . . on the basis of an after-the-fact discovery of . . . a parole condition."); *Fitzgerald v. City of Los Angeles*, 485

F.Supp. 2d 1137, 1142 (C.D. Cal. 2007) (noting that "advance knowledge of a parolee's status is critical to the constitutionality of a suspicionless search of a parolee"); *In re Jaime P.*, 40 Cal. 4th 128, 139 (2006) (noting that, where the "arresting officer had neither reasonable suspicion of criminal activity *nor advance knowledge* of a search condition that might have justified the search," "[t]he totality of these circumstances amounts to very little and does not justify the officer's search") (emphasis added); *People v. Sanders*, 31 Cal. 4th 318, 332-33 (2003). Moreover, the § 3067(a) search condition applies only to parolees whose offense "was committed on or after January 1, 1997." Cal. Pen. Code § 3067(c).

**[12]** Here, the record provides an insufficient basis for us to find that the search of Caseres's car was constitutional as a parole search. Although Lt. Murphy testified that he was aware Caseres was on parole prior to ordering the search of his vehicle, the government failed to establish that Lt. Murphy knew when, and in what state, Caseres committed the crime for which he was paroled. There is no evidence that Lt. Murphy knew Caseres was a parolee of the State of California, to whom § 3067(a) applied. Nor is there evidence that Lt. Murphy knew whether Caseres's prior offense had been committed prior to January 1, 1997. *See* Cal. Pen. Code § 3067(c). Because the record does not establish that Lt. Murphy was aware that Cal. Pen. Code § 3067 applied before he ordered the search of Caseres's car, the search is not justified by the state's interest in supervising probationers. *See Fitzgerald*, 485 F. Supp. 2d at 1142. We cannot, therefore, uphold the search as a parole search.

## CONCLUSION

**[13]** Because the government has failed to demonstrate that any exceptions to the probable cause requirement apply, we hold that the search of Caseres's car without probable cause violated the Fourth Amendment. The evidence obtained as a result of the unlawful search must therefore be suppressed.

We reverse the district court's denial of the motion to suppress and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.