**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  17-50147 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-00055-CAS-1 |
| v. | |
| BRITTANY MARIE GRIGSBY, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted July 12, 2018
Pasadena, California

Before:  BERZON, FISHER,[**] and WATFORD, Circuit Judges.

Defendant-Appellant Brittany Marie Grigsby ("Grigsby") appeals from the

denial of her motion to suppress evidence gathered from a police encounter and

subsequent vehicle search. We affirm the district court.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable D. Michael Fisher, United States Circuit Judge for the
U.S. Court of Appeals for the Third Circuit, sitting by designation.

**1.** Grigsby's initial encounter with Police Officer Atkinson ("Officer Atkinson") did not amount to a seizure. An officer seizes an individual for Fourth Amendment purposes if "'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

A reasonable person in Grigsby's circumstances would have felt free to leave the encounter. Here, Grigsby was the one who initiated the encounter by approaching the police officers on a public sidewalk and asked to pick up Mr. Soto, whom they were questioning at the time. Without restraining or obstructing Grigsby in any way, Officer Atkinson "instructed [her] to return to her vehicle and wait until [he came to] speak with her." Grigsby then returned to her vehicle, also in a public space and seemingly outside the view of the officers. Nothing prevented her from driving away. Officer Atkinson's instruction, without more, does not transform the encounter into a seizure. In context, Officer Atkinson issued only a condition for picking up Mr. Soto: If Grigsby wished to leave with Mr. Soto, she

had to wait until the officers were finished questioning him. If not, she was free to leave.[1]

**2.**     Grigsby's rental car was properly impounded under the community caretaking exception to the Fourth Amendment's warrant requirement. "Whether an impoundment is warranted under [the] community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005). We have repeatedly held that the community caretaking exception can justify impoundment of an arrestee's vehicle from a private parking lot to protect it from vandalism. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1025 (9th Cir. 2009); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 n.4 (9th Cir.1993).

This case is no different. As the district court found, Officer Atkinson impounded the vehicle because it would be subject to towing if left in the private 7-Eleven parking lot and because it might be vandalized or stolen in the high crime

---

[1]Grigsby argued for the first time on appeal that the seizure continued when Officer Atkinson subsequently approached Grigsby near her vehicle and asked for her name and date of birth. Because we conclude that Grigsby was not initially seized, her seizure could not have continued when Officer Atkinson asked for identifying information.

area where it was parked. These findings — uncontested by Grigsby — sufficiently justify the impoundment.

**3.**     Officer Atkinson's warrantless search of the impounded rental vehicle was justified by the automobile exception to the Fourth Amendment's warrant requirement.[2] At the time Officer Atkinson initiated the search, he was within his authority to do so pursuant to an inventory search. "A lawfully impounded vehicle may be searched for the purpose of determining its condition and contents at the time of impounding" so long as the search is conducted "pursuant to standard police procedures that are aimed at protecting the owner's property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property." *United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008). El Monte Police Department ("EMPD") procedures provide: "All property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if closed and/or locked." On appeal, Grigsby does not contest that Officer Atkinson initiated the vehicle search with a purpose to inventory its contents, rather than to

---

[2]Although the Government did not raise this argument on appeal, they did so before the district court, and we may affirm the district court's decision on any ground supported by the record. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 974 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1992 (2018).

investigate criminal activity. Officer Atkinson was therefore justified in entering the vehicle and opening the bag located on the front passenger seat.

Once Officer Atkinson discovered credit cards with names of different people in that bag, he was justified in searching the rest of the vehicle under the automobile exception. The automobile exception allows police to "conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). Here, it was reasonable for Officer Atkinson to conclude that the vehicle would contain additional evidence of identity theft. He had found such evidence immediately upon searching the vehicle and also, before continuing the search, he spotted pieces of mail not belonging to Grigsby in another open bag on the floor of the passenger seat.

The fact that Officer Atkinson did not follow EMPD inventory policy by listing all property found in the vehicle storage form does not affect the propriety of the vehicle search after he developed probable cause that the vehicle would

contain more evidence of identity theft.[3] At that point, whether a valid inventory search or not, the search was independently justified under the automobile exception.

**AFFIRMED**.

---

[3]EMPD policy also notes that "inventory searches should be as thorough and accurate as practical in preparing an itemized inventory." The Government contends that although Officer Atkinson did not inventory every item in Grigsby's car, his search nonetheless complied with EMPD policy because it was "practical" under the circumstances. If the search was indeed performed in such a manner, it might comply with EMPD policy. But because we conclude the search was justified by the automobile exception, we do not reach this argument.

*United States v. Grigsby*, No. 17-50147

BERZON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Grigsby's encounter with EMPD officers did not amount to a seizure within the meaning of the Fourth Amendment and that the impoundment of her rental car was proper under the community caretaking doctrine. However, I dissent from the majority's holding that the subsequent search of her car was a valid search under the automobile exception.

The majority holds that Officer Atkinson initiated a valid inventory search, and then—upon discovering incriminating evidence in the car—was justified in continuing the search under the automobile exception to the Fourth Amendment's warrant requirement. But the majority errs in the first step. The initiation of the search cannot be justified as an inventory search. Officer Atkinson never intended to follow, nor did he follow, EMPD's standard inventory procedures. "[W]arrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures." *United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008); *see also United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). According to EMPD's inventory policy, "*[a]ll* property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form." EMPD Policy Manual § 510.4 (emphasis added).

1

Officer Atkinson admitted to applying an entirely different policy. He stated that he was looking for only high-value items in Grigsby's car. The officer did not just overlook a few stray things; he inventoried an entirely separate category of items than the policy required.

The failure to follow standard inventory procedures rendered the inventory search unlawful from the outset. We do not apply a different standard to the initiation of an inventory search and its continuation. It is the requirement that officers conduct searches consistent with standard procedures that ensures that such searches are not "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Following standard inventory procedures constrains officers *ex ante* from turning inventory searches into general means of discovering evidence of crime. Deviation from such procedures indicates that an impermissible purpose motivated the search in the first place.

Further, Officer Atkinson testified that the inventory search did not end after he found the bag containing the incriminating bank cards, but continued as he searched the rest of the car. He was therefore obligated to follow standard EMPD policy and inventory *all* items.

The majority's holding will allow police officers to enter an individual's car without a warrant and without regard to standard police procedures in their search

for incriminating evidence. Any evidence found then retroactively justifies the initial search. Because this approach gets the Fourth Amendment backwards, *see Osborn v. United States*, 385 U.S. 323, 343-44 (1966) ("[I]llegal searches and seizures . . . . [are] indicative of a philosophy that the ends justify the means."), I respectfully dissent.