136 F.3d 670
 1998 A.M.C. 1017, 98 Cal. Daily Op. Serv. 1125
 UNITED STATES of America, Plaintiff-Appellant,
v.
Mark ALBERS; Jim T. Freegard; David Moran; Erin Moran;
David Pierce; Carmel Presse; Lyle Presse J.; Jeff Schabs;
Mark Sheehan; Kirk Smith; David M. Strobel; Steve Van
Horn, Defendants-Appellees.
 No. 96-10561.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Sept. 16, 1997.*
Decided Feb. 17, 1998.
As Amended on Denial of Rehearing March 20, 1998.
 
 Scott Bales, Assistant United States Attorney, Phoenix, AZ, for plaintiff-appellant.
 Fred M. Morelli, Jr., Aurora, IL, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona; Roger G. Strand, District Judge, Presiding. D.C. No. CR-95-00448-RGS.
 Before KOZINSKI, MAYER** and FERNANDEZ, Circuit Judges.
 KOZINSKI, Circuit Judge:
 
 
 1
 National Park Service rangers discovered Mark Albers and his friends (collectively, "Albers") in a rented houseboat floating on Lake Powell, Arizona. Suspecting Albers was BASE jumping[1] in a national recreation area, a federal crime, the rangers searched the houseboat. During the search they seized videotapes and undeveloped film as well as parachutes, helmets and other equipment. Albers was arrested and charged with violating 36 C.F.R. §§ 2.17(a)(3) and 2.34(a)(4). He moved to suppress the evidence seized by the rangers; the district court granted the motion as to the videotapes and film, reasoning that the rangers should have examined them at the time and place of the search, rather than taking them away and viewing them several days later. In this interlocutory appeal, the government argues that the film and videotapes fall within the closed container rule of United States v. Johns, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). Because we may affirm on any basis supported by the record, Rosenbaum v. Hartford Fire Ins. Co., 104 F.3d 258, 261 (9th Cir.1996), Albers challenges the search and seizure on other grounds as well.[2]
 
 
 2
 Albers claims that the entire houseboat search was illegal because the rangers did not first obtain a search warrant. The law is well settled that "absent exigent circumstances, a warrantless entry to search for ... contraband is unconstitutional even when ... there is probable cause to believe that incriminating evidence will be found within." Payton v. New York, 445 U.S. 573, 587-88, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980). But there are exceptions. The government asserts-and the district court held-that the lack of a warrant did not render the search illegal because houseboats are covered by the vehicle exception to the warrant requirement.
 
 
 3
 Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), held that warrantless searches of automobiles were justified "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Id. at 153, 45 S.Ct. at 285. Later Supreme Court cases found a second rationale: "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." South Dakota v. Opperman, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). This is so because "[a]utomobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements." Id. at 368, 96 S.Ct. at 3096.
 
 
 4
 No Supreme Court case directly extends the vehicle exception to houseboats, but in California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Court came close when it held that a readily mobile motor home could be searched without a warrant because both justifications for the vehicle exception applied:
 
 
 5
 While it is true that respondent's vehicle possessed some, if not many of the attributes of a home, it is equally clear that the vehicle falls clearly within the scope of the exception laid down in Carroll and applied in succeeding cases. Like the automobile in Carroll, respondent's motor home was readily mobile. Absent the prompt search and seizure, it could readily have been moved beyond the reach of the police. Furthermore, the vehicle was licensed to operate on public streets; was serviced in public places; ... and was subject to extensive regulation and inspection.
 
 
 6
 Carney, 471 U.S. at 393, 105 S.Ct. at 2070 (internal citations and quotation marks omitted). Though a motor home has the characteristics of both a home and a motor vehicle, it is the latter characteristics that govern in applying the Fourth Amendment's warrant requirement.
 
 
 7
 Whether Albers' houseboat falls within the vehicle exception depends on whether, for purposes of Carney, houseboats are the same as motor homes. This is a question of first impression in our circuit but one the Tenth Circuit has resolved without much difficulty. See United States v. Hill, 855 F.2d 664, 668 (10th Cir.1988). In Hill, defendants sought to suppress evidence obtained during the warrantless search of their houseboat. Id. at 666. Noting that no case dealt with houseboat searches, Hill looked to cases involving motor vehicle searches, focusing particularly on Carney. Id. at 667. Because houseboats, like motor homes, are readily capable of functioning as both vehicles and homes, and the Supreme Court considered and resolved the tension created by this dual nature, Hill concluded that Carney controls. Id. at 668. We agree with the Tenth Circuit and hold that the vehicle exception applies to houseboats so long as Carney 's requirements are met.
 
 
 8
 Carney first asks whether the vehicle was "obviously readily mobile by the turn of an ignition key, if not actually moving." Carney, 471 U.S. at 393, 105 S.Ct. at 2070. Albers' houseboat was found in open public waters, obviously mobile. Carney also asks whether there was "a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling[.]" Id. Albers had such a reduced expectation of privacy because at any time an authorized person could have stopped and boarded his boat "to determine compliance with regulations pertaining to safety equipment and operation." See 36 C.F.R. § 3.5(a). Indeed, the government's traditional power to board a vessel is far greater than its power to enter a motor home or a car, see United States v. Villamonte-Marquez, 462 U.S. 579, 592, 103 S.Ct. 2573, 2581-82, 77 L.Ed.2d 22 (1983) (suspicionless boarding of ships for inspection of documents not contrary to Fourth Amendment). Finally, Carney asks whether "the vehicle was so situated that an objective observer would conclude that it was being used not as a residence, but as a vehicle." 471 U.S. at 393. We recognize that in many situations it will be objectively apparent that a houseboat is being used as a home and not a vehicle.[3] However, in Hill, the Tenth Circuit noted that "an objective observer would conclude that a moving boat navigating the waters of a large lake on a cold winter night was not being used as a residence." 855 F.2d at 668. Similarly, since Albers had moved his houseboat to open waters on a large lake, an objective observer would conclude that he was using the houseboat as a vehicle. Carney 's requirements were satisfied and Albers' houseboat could be searched without a warrant.
 
 
 9
 Albers argues that even if the rangers could search the boat without a warrant, this particular search and seizure was unreasonable because they lacked probable cause. "Under the vehicle exception to the warrant requirement, only the prior approval of the magistrate is waived; the search otherwise must be such as the magistrate could authorize [i.e., there must be probable cause]." Carney, 471 U.S. at 394, 105 S.Ct. at 2071 (internal citations and quotation marks omitted). Probable cause exists when there is fair probability that evidence of a crime will be found in a particular place. See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); United States v. Alvarez, 899 F.2d 833, 839 (9th Cir.1990). Despite Albers' claims to the contrary, there was probable cause to suspect that evidence of BASE jumping would be found on the houseboat. Ranger Christopher Cessna saw Albers' boat below a cliff known for BASE jumping; earlier that day he had received reports of BASE jumping in the area; damp BASE jumping equipment was in plain view on the boat's deck; people on the boat seemed nervous and refused to answer Cessna's questions. Cessna knew all this before he boarded Albers' boat, and therefore had probable cause to believe that the boat contained evidence of BASE jumping.
 
 
 10
 Probable cause also supported the seizure of the videotapes and film. The videotapes were labeled "Throw Mama from the Plane," "BASE Jump Copy," and "Bungi BASE Jump." Cessna testified that BASE jumpers often videotape their illegal activities, which was consistent with the presence of a video camera on the boat. Cessna had sufficient reason to believe that the tapes and film contained evidence of BASE jumping, so seizing them was constitutional.
 
 
 11
 The district court suppressed the videotapes and film on the ground that the rangers should have viewed them at the scene, rather than seizing them and then viewing them several days later. This ruling was error. The Supreme Court in United States v. Johns, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), refused to hold that police must immediately search all containers and packages discovered during a warrantless vehicle search. "This result would be of little benefit to the person whose property is searched, and where police officers are entitled to seize the container and continue to have probable cause to believe that it contains contraband, we do not think that delay in the execution of the warrantless search is necessarily unreasonable." Id. at 487, 105 S.Ct. at 886-87. The containers in Johns were plastic packages of marijuana, not videotapes and film, but the difference cuts entirely against Albers. Whereas the contents of most containers can be examined with relative ease at the scene, videotapes and film require specialized equipment and often take many hours to view. The justification for postponing examination is thus stronger for tapes and film than for ordinary closed containers.
 
 
 12
 When there is probable cause to suspect that videotapes and film contain evidence of a crime, they need not be viewed at the scene of the search. As Johns also held, however, the delay must be reasonable in light of all the circumstances. See Johns, 469 U.S. at 487, 105 S.Ct. at 886-87. The seven to ten day delay in viewing the videotapes and film in Albers' case was not unreasonable, especially given that the film had to be developed before it could be examined. See Cooper v. California, 386 U.S. 58, 61-62, 87 S.Ct. 788, 790-91, 17 L.Ed.2d 730 (1967) (upholding warrantless search seven days after seizure).
 
 
 13
 REVERSED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 The Honorable H. Robert Mayer, United States Court of Appeals for the Federal Circuit, sitting by designation. Judge Mayer assumed the position of Chief Judge on December 25, 1997
 
 
 [1]
 BASE (Building Antenna Span and Earth) jumping refers to parachuting from fixed objects. In this case, Albers allegedly parachuted from canyon walls into Lake Powell
 
 
 [2]
 We are aware that in United States v. Becker, 929 F.2d 442, 447 (9th Cir.1991), we refused to consider an alternate theory to uphold a suppression order. However, we recognized that we could consider alternate grounds and declined to do so because the defendant sought to have us suppress "not just the evidence the district court suppressed, but all evidence seized during the searches[.]" Id. Here we are asked to consider the alternate ground for the sole purpose of upholding the specific suppression of evidence which the government appeals
 
 
 [3]
 A houseboat not independently mobile or one that is permanently moored would present a different case