**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee*,

v.

CHAD DANIEL CAMOU,
          *Defendant-Appellant*.

No. 12-50598

D.C. No.
3:11-cr-05027-H-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued May 7, 2013
Submitted December 3, 2014
Pasadena, California

Filed December 11, 2014

Before: Harry Pregerson and Raymond C. Fisher, Circuit
Judges, and James S. Gwin, District Judge.[*]

Opinion by Judge Pregerson

---

[*] The Honorable James S. Gwin, District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel reversed the district court's denial of a criminal defendant's motion to suppress images of child pornography found on his cell phone during a warrantless search.

The panel held that the warrantless search of the cell phone at a Border Patrol checkpoint's security offices was not roughly contemporaneous with the defendant's arrest and, therefore, not a search incident to arrest, given both the passage of one hour and twenty minutes between arrest and search, and the seven intervening acts between arrest and search that signaled the arrest was over.

The panel held that the search of the cell phone is not excused under the exigency exception to the warrant requirement because the government failed to show exigent circumstances that required immediate police action, and even if the exigencies permitted a search of the phone to prevent the loss of call data, the search's scope was impermissibly overbroad.

The panel held that cell phones are not containers for purposes of the vehicle exception to the warrant requirement, and that the search of the defendant's cell phone therefore cannot be justified under that exception.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that neither the inevitable-discovery exception to the exclusionary rule, nor the good-faith exception, applies.

## COUNSEL

James Fife, Deputy Federal Public Defenders, San Diego, California, for Defendant-Appellant

Alessandra P. Serano, Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

PREGERSON, Circuit Judge:

Chad Camou appeals the district court's denial of his motion to suppress images of child pornography found on his cell phone during a warrantless search. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

### FACTUAL & PROCEDURAL BACKGROUND

### I. Camou's Arrest and the Seizure of Camou's Cell Phone at 10:40 p.m.

On August 1, 2009, United States Border Patrol agents stopped a truck belonging to Chad Camou at a primary inspection checkpoint on Highway 86 in Westmorland, California. Camou was driving the truck, while his girlfriend, Ashley Lundy, sat in the passenger seat. Agents at the checkpoint grew suspicious when Lundy did not make eye

contact, so they asked Camou if they could open the door to the truck. Once they opened the door, the agents saw Alejandro Martinez-Ramirez (Martinez-Ramirez), an undocumented immigrant, lying on the floor behind the truck's front seats. Consequently, at about 10:40 p.m., agents arrested and handcuffed Camou, Lundy, and Martinez-Ramirez. At the same time, agents also seized Camou's truck and a cell phone found in the cab of the truck. Agents then moved Camou, Lundy, and Martinez-Ramirez into the checkpoint's security offices for booking.

## II. Agents Processed, Booked, and Interviewed Camou at the Security Offices

Once at the checkpoint's security offices, Border Patrol agents processed and booked Camou and Lundy. At some point during the booking process, Border Patrol Agent Andrew Baldwin inventoried Camou's cell phone as "seized property and evidence."

Agents then began to interview Camou and Lundy. Lundy was given *Miranda* warnings. It is unclear whether Camou was given *Miranda* warnings or whether he said anything to the agents at this point. Neither Camou nor Lundy asked for an attorney.

During Lundy's initial interview with Border Patrol Agent Richard Walla, Lundy waived her *Miranda* rights and explained that, before she and Camou picked up Martinez-Ramirez, Camou had received a phone call from Jessie, a.k.a. "Mother Teresa." "Mother Teresa" arranged for Camou to pick up Martinez-Ramirez in Calexico, California and transport him to either Palm Desert, California or Coachella, California. During Lundy's interview, Camou's cell phone

rang several times. The caller identification screen on the phone displayed the phone number that Lundy had identified as belonging to "Mother Teresa." Agents asked Camou if the cell phone belonged to him. Camou replied, "Yes."

Border Patrol Agents Jason Masney and Ciudad Real attempted to further interview Martinez-Ramirez, Camou, and Lundy. Martinez-Ramirez told the agents that he had been in the car for about forty minutes and that Camou had planned to take him to Los Angeles. Camou invoked his right to remain silent. Lundy, meanwhile, agreed to answer more questions. She told the agents that she and Camou had been smuggling undocumented immigrants about eight times per month for about nine months. She explained that Camou would receive phone calls from smugglers on his cell phone both before and after passing the Highway 86 checkpoint.

## III.     Warrantless Search of Camou's Cell Phone at 12:00 a.m.

At 12:00 a.m., one hour and twenty minutes after Camou's arrest, Agent Walla searched Camou's cell phone. In his subsequent report, Agent Walla claimed he was looking for evidence of "known smuggling organizations and information related to the case." Agent Walla did not assert that the search was necessary to prevent the destruction of evidence or to ensure his or anyone else's safety.

Agent Walla searched the call logs of the cell phone and discovered several recent calls from "Mother Teresa." Agent Walla closed the call logs screen and opened the videos stored on the phone's internal memory. He saw several videos that appeared to be taken near the Calexico, California Port of Entry. He then closed the videos and opened the

photographs, which were also stored on the phone's internal memory. He "scrolled quickly through about 170 of the images before stopping. Of the images he viewed, about 30 to 40 were child pornography. Walla was disturbed by the images and stopped reviewing the contents of the phone."

After stopping the search, Agent Walla called U.S. Immigration and Customs Enforcement, the Imperial County Sheriff's Office, and the FBI to pursue child pornography charges against Camou. Assistant United States Attorney John Weis at the El Centro Sector Prosecutions Office did not pursue alien smuggling charges against Camou because Weis decided that the smuggling case against Camou "did not meet prosecution guidelines." Weis informed Border Patrol agents of his decision the same day Camou's cell phone was searched by Agent Walla.

Several days later, on August 5, 2009, the FBI executed a federal warrant to search Camou's cell phone for child pornography. Pursuant to the warrant, the FBI found several hundred images of child pornography on the cell phone.

## IV.    District Court Proceedings

A grand jury indicted Camou for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Camou moved the district court to suppress the child pornography images found on his cell phone, arguing that the warrantless search of his cell phone at the checkpoint's security offices violated his Fourth Amendment rights. The district court denied Camou's motion. The district court found that the search of the phone was a lawful search incident to arrest and, even if the search was unconstitutional,

the good faith and inevitable discovery exceptions to the exclusionary rule were satisfied.

Camou entered a conditional guilty plea to possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Camou was sentenced to thirty-seven months in prison followed by five years of supervised release. Camou is currently serving his prison sentence. Camou appeals the district court's denial of his motion to suppress.

## STANDARD OF REVIEW

We review de novo the district court's denial of a motion to suppress. *United States v. Song Ja Cha*, 597 F.3d 995, 999 (9th Cir. 2010). We review the district court's underlying factual findings for clear error. *Id.* We review de novo the application of the good faith and inevitable discovery exceptions to the exclusionary rule. *United States v. Krupa*, 658 F.3d 1174, 1179 (9th Cir. 2011).

## DISCUSSION

Camou argues that the warrantless search of his cell phone was unconstitutional because the search was not incident to arrest, and no other exceptions to the warrant requirement apply. Camou also argues that the exclusionary rule bars the admissibility of the images found on his phone. We agree.

## I. Search Incident to Arrest

A search incident to a lawful arrest is an exception to the general rule that warrantless searches violate the Fourth Amendment. The exception allows a police officer making

a lawful arrest to conduct a search of the area within the arrestee's "immediate control," that is, "the area from within which [an arrestee] might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969) (internal quotation marks omitted), *abrogated on other grounds by Arizona v. Gant*, 556 U.S. 332, 344 (2009).

The first requirement of a search incident to arrest is that the search be limited to the arrestee's person or areas in the arrestee's "immediate control" at the time of arrest. *Gant*, 556 U.S. at 339; *Chimel*, 395 U.S. at 763; *United States v. Turner*, 926 F.2d 883, 887 (9th Cir. 1991). The "immediate control" requirement ensures that a search incident to arrest will not exceed the rule's two original purposes of protecting arresting officers and preventing the arrestee from destroying evidence: "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Gant*, 556 U.S. at 339.[1]

The second requirement of a search incident to arrest is that the search be spatially and temporally incident to the arrest. *See United States v. Chadwick*, 433 U.S. 1, 15 (1977), *abrogated on other grounds by California v. Acevedo*,

---

[1] One exception to the immediate control requirement, however, occurs in the vehicle context. Where the search incident to arrest is of a vehicle, the Supreme Court has held: "Although it does not follow from *Chimel*, we also conclude that circumstances unique to the vehicle context justify a search incident to lawful arrest when it is '*reasonable to believe evidence relevant to the crime of the arrest might be found in the vehicle*.'" *Gant*, 556 U.S. at 343 (emphasis added) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)).

500 U.S. 565, 580 (1991); *United States v. Hudson*, 100 F.3d 1409, 1419 (9th Cir. 1996). The Supreme Court has held that "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest . . . *if the search is remote in time or place from the arrest . . . .*" *Chadwick*, 433 U.S. at 15 (emphasis added). We have interpreted the temporal requirement to mean that the search must be "roughly contemporaneous with the arrest." *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) (per curiam).

We have summed up the two general requirements of a valid search incident to arrest as follows: "The determination of the validity of a search incident to arrest in this circuit is a two-fold inquiry: (1) was the searched item 'within the arrestee's immediate control when he was arrested'; (2) did 'events occurring after the arrest but before the search ma[k]e the search unreasonable'?" *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010) (quoting *United States v. Turner*, 926 F.2d 883, 887 (9th Cir. 1992)).

We need not decide whether the government meets the first requirement of search incident to arrest because the government cannot show that the second requirement—that the search be spatially and temporally incident to the arrest—is met.

Agent Walla's search of Camou's cell phone was too far removed in time from Camou's arrest to be incident to that arrest. As stated above, we have interpreted the temporal requirement to mean that the search must be "roughly contemporaneous with the arrest." *Smith*, 389 F.3d at 951. To determine whether this contemporaneity requirement is met, we have stated that the focus is "upon whether the arrest

and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former." *Id.* In some cases, we have "relied on the number of minutes that passed between the arrest and the search. . . . In other cases, we have relied on a more impressionistic sense of the flow of events that begins with the arrest and ends with the search." *United States v. Caseres*, 533 F.3d 1064, 1073 (9th Cir. 2008).

In *Caseres*, we found that a search of the arrestee-defendant's car was not incident to arrest for two independent reasons: (1) the "arrest was not spatially related to the vehicle" because Caseres, the arrestee, was a block and a half away from his car at the time of his arrest; and (2) "the search . . . was too far removed in time from the arrest to be considered as truly incidental to [the] arrest." *Id.* at 1072, 1074. We noted that, while it was unclear from the record how much time passed between arrest and search, the district court reasonably found the search was conducted "well after" the arrest. *Id.* at 1074. In holding that the search was too temporally removed from the arrest, we reasoned that the "arrest and the search were separated not only by substantial time, but also by a string of intervening events that signaled that the exigencies of the situation had dissipated." *Id.* The intervening events we noted were: police questioning of Caseres, conversations between police, and police moving back and forth between the site of the arrest and Caseres's car. *Id.*

In *Maddox*, we similarly held that the warrantless search of an arrestee-defendant's car was not incident to arrest, but in so holding we relied solely on intervening events between the arrest and search. 614 F.3d at 1048. In *Maddox*, after Maddox ignored the officer's request to exit his car following

a stop for reckless driving, the officer seized Maddox's key chain and cell phone and threw them on the front seat. *Id.* at 1047. The officer arrested and handcuffed Maddox and placed him in the back of the patrol car. *Id.* He then returned to Maddox's car, reached inside, and grabbed the key chain and cell phone. *Id.* The key chain included a metal vial with a screw top. *Id.* The officer unscrewed the metal vial's top and discovered methamphetamine inside. *Id.* We held that the intervening event of Maddox being handcuffed and placed in the back of a patrol car rendered the search unreasonable. *Id.* at 1048–49; *see also United States v. Vasey*, 834 F.2d 782, 787–88 (9th Cir. 1987) (holding that the warrantless search of Vasey's car was not incident to arrest where the search occurred thirty to forty-five minutes after Vasey was arrested; Vasey was handcuffed and placed in the back of the patrol car before the search; and officers "conducted several conversations with Vasey" between arrest and search); *United States v. Monclavo-Cruz*, 662 F.2d 1285, 1288 (9th Cir. 1981) (holding that the warrantless search of an arrestee's purse at the station house, about an hour after she was arrested next to her car, was not sufficiently contemporaneous with the arrest to be incident to arrest).[2]

Here, Agent Walla's search of Camou's cell phone was not roughly contemporaneous with Camou's arrest and,

---

[2] We briefly note that, by citing to *United States v. Johns*, 469 U.S. 478 (1985), the government incorrectly conflates two different search and seizure doctrines: search incident to arrest and the vehicle exception to the warrant requirement. As *Johns* did not concern a search incident to arrest, *Johns*'s holding allowing a three-day delay in searching seized items does not help the government's search incident to arrest argument. We revisit the government's *Johns* argument in the next section when analyzing whether the vehicle exception to the warrant requirement applies.

therefore, was not incident to arrest. First, one hour and twenty minutes passed between Camou's arrest and Agent Walla's search of the cell phone. This delay is longer than the thirty to forty-five minutes in *Vasey* and the one hour in *Monclavo-Cruz*; and the searches in those two cases were deemed not sufficiently contemporaneous with arrest.

Second, a string of intervening acts occurred between Camou's arrest and the search of his cell phone that make the one hour and twenty minute delay even more unreasonable: (1) Camou and Lundy were restrained with handcuffs; (2) Camou and Lundy were moved from the checkpoint area to the security offices; (3) Camou and Lundy were processed; (4) agents moved Camou's cell phone from the vehicle into the security offices, inventoried the phone as a seized item, and moved the phone into the interview rooms; (5) Camou and Lundy were interviewed as part of the booking process; (6) Martinez-Ramirez was interviewed; and (7) Agents Masney and Real interviewed Lundy for a second time and tried to interview Camou, who invoked his right to remain silent. These intervening acts include the same sort of intervening acts in *Caseres*—police questioning the arrestee, conversations between police, and police moving between the site of the arrest and the site of search—as well as the intervening acts of *Maddox* and *Vasey*—police handcuffing the arrestee and placing him under police control. And here we also have the additional intervening acts of police booking the arrestee, police questioning the material witness, Martinez-Ramirez, and police moving the item to be searched—i.e., Camou's cell phone—from the site of the arrest to the security offices.

Given both the passage of one hour and twenty minutes between arrest and search and the seven intervening acts

between arrest and search that signaled the arrest was over, we conclude that the search of the phone was not roughly contemporaneous with arrest and, therefore, was not a search incident to arrest.

## II. Two Other Exceptions to the Warrant Requirement: the Exigency Exception & the Vehicle Exception

Several of the government's arguments more properly fall under the exigency and vehicle exceptions. For the reasons explained below, we conclude that neither of these exceptions is met.

### A. The Exigency Exception

Under the exigency exception, officers may make a warrantless search if: (1) they have probable cause to believe that the item or place to be searched contains evidence of a crime, and (2) they are facing exigent circumstances that require immediate police action. *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298–301 (1967) (upholding a warrantless search where "the exigencies of the situation made that course imperative"). We have defined exigent circumstances as "those circumstances that would cause a reasonable person to believe that entry [or search] . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. McConney,* 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc), *overruled on other grounds by Estate of Merchant v. Comm'r*, 947 F.2d 1390, 1392–93 (9th Cir. 1991). To be reasonable, a search under this exception must be limited in scope so that it is "strictly circumscribed by the exigencies

which justify its initiation." *Mincey v. Arizona*, 437 U.S. 385, 393 (1978) (internal quotation marks omitted); *see also United States v. Reyes-Bosque*, 596 F.3d 1017, 1029 (9th Cir. 2010) ("In order to prove that the exigent circumstances doctrine justified a warrantless search, the government must [also] show that . . . the search's scope and manner were reasonable to meet the need.").

After we submitted this case, the Supreme Court granted the petition for writ of certiorari in *Riley v. California*, 134 S. Ct. 999 (2014), on January 17, 2014, to answer the following question: "Whether evidence admitted at petitioner's trial was obtained in a search of petitioner's cell phone that violated petitioner's Fourth Amendment rights." We then vacated submission of this case pending the Supreme Court's decision in *Riley*. On June 25, 2014, the Supreme Court issued its unanimous decision in *Riley v. California*, 134 S. Ct. 2473 (2014), holding that "a warrant is generally required before . . . a search [of a cell phone], even when a cell phone is seized incident to arrest." *Id.* at 2493. The Court went on, however, to note that "other case-specific exceptions may still justify a warrantless search of a particular phone." *Id.* at 2494. Specifically, the exigency exception "could include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury." *Id*.

Even if there was probable cause to search Camou's cell phone, we conclude that the government failed to meet the second prong of the exigency exception: exigent circumstances that require immediate police action.

The government argues that "the volatile nature of call logs and other cell phone information with the passing of time" presented an exigent circumstance. *Riley* forecloses this argument. There, the Court determined that "once law enforcement officers have secured a cell phone, there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone." *Riley*, 134 S. Ct. at 2486. And although "information on a cell phone may nevertheless be vulnerable to . . . remote wiping," there is "little reason to believe that [this] problem is prevalent." *Id*. And, "as to remote wiping, law enforcement is not without specific means to address the threat. Remote wiping can be fully prevented by disconnecting the phone from the network." *Id.* at 2487. When "the police are truly confronted with a 'now or never' situation—for example, circumstances suggesting that a defendant's phone will be the target of an imminent remote-wipe attempt—they may be able to rely on exigent circumstances to search the phone immediately." *Id* (internal quotation marks omitted). Here, the search of Camou's cell phone occurred one hour and twenty minutes after his arrest. This was not an "imminent" "now or never situation" such that the exigency exception would apply. Moreover, the record does not indicate that Agent Walla believed the call logs on Camou's cell phone were volatile and that a search of Camou's phone was necessary to prevent the loss of recent call data.

And even if we were to assume that the exigencies of the situation permitted a search of Camou's cell phone to prevent the loss of call data, the search's scope was impermissibly overbroad. The search in this case went beyond contacts and call logs to include a search of hundreds of photographs and videos stored on the phone's internal memory. Thus, Agent Walla exceeded the scope of any possible exigency by

extending the search beyond the call logs to examine the phone's photographs and videos. *See State v. Carroll*, 778 N.W.2d 1, 12 (Wis. 2010) (holding that the exigency exception justified the answering of an incoming call on the defendant's cell phone but did not justify a search of images stored on the phone "because there were no exigent circumstances at the time requiring [the officer] to review the gallery or other data stored on the phone. That data was not in immediate danger of disappearing before [the officer] could obtain a warrant."). We therefore conclude that the search of Camou's cell phone is not excused under the exigency exception to the warrant requirement.

## B.  The Vehicle Exception

Another exception to the Fourth Amendment's warrant requirement is the vehicle exception. *Carroll v. United States*, 267 U.S. 132, 153–54 (1925). Under the vehicle exception, officers may search a vehicle and any containers found therein without a warrant, so long as they have probable cause. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Ross*, 456 U.S. 798, 821–22, 825 (1982). Unlike search incident to arrest, the vehicle exception is not rooted in arrest and the *Chimel* rationales of preventing arrestees from harming officers and destroying evidence. Instead, the vehicle exception is motivated by the supposedly lower expectation of privacy individuals have in their vehicles as well as the mobility of vehicles, which allows evidence contained within those vehicles to be easily concealed from the police. *Carroll*, 267 U.S. at 153; *California v. Carney*, 471 U.S. 386, 390–91 (1985).

As the Supreme Court noted in *Arizona v. Gant*, the permissible scope of a vehicle exception search is "broader"

than that of a search incident to arrest: "If there is probable cause to believe a vehicle contains evidence of criminal activity, [*Ross*] authorizes a search of any area of the vehicle in which the evidence might be found. . . . *Ross* allows searches for evidence relevant to offenses other than the offense of arrest." 556 U.S. 332, 347 (2009) (citing *Ross*, 456 U.S. at 820–21). Moreover, unlike searches incident to arrest, searches of vehicles and containers pursuant to the vehicle exception need not be conducted right away. *United States v. Johns*, 469 U.S. 478, 487–88 (1985). So long as the officers had probable cause to believe the car had evidence of criminal activity when they seized a container from inside the car, they may delay searching it. *Id.* Delays, however, must be "reasonable in light of all the circumstances." *United States v. Albers*, 136 F.3d 670, 674 (9th Cir. 1998) (upholding as reasonable a seven- to ten-day delay in viewing videotapes and film seized from a houseboat).

We assume that the agents had probable cause to believe Camou's truck contained evidence of criminal activity once they saw Martinez-Ramirez lying down behind the seats of the truck. If the vehicle exception applied in this case, pursuant to *Johns* and *Albers*, the one hour and twenty minute delay between the seizure of Camou's cell phone and the search of its contents would not invalidate the search. We hold, however, that cell phones are not containers for purposes of the vehicle exception.

In *New York v. Belton*, the Supreme Court defined "container" as "any object capable of holding another object" and explained that in the vehicle context, containers "include[] closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and

the like."  453 U.S. 454, 460 n.4 (1981), *overruled on other grounds by Gant*, 556 U.S. at 350–51.  In *United States v. Ross*, the Supreme Court provided "paper bags, locked trunks, lunch buckets, and orange crates" as examples of containers.  456 U.S. 798, 821–22 (1982).

Then, in *Riley*, the Supreme Court examined the definition of "container" as it would apply to cell phones and the search incident to arrest exception.  The Court found:

> Treating a cell phone as a container whose contents may be searched incident to an arrest is a bit strained as an initial matter.  But the analogy crumbles entirely when a cell phone is used to access data located elsewhere, at the tap of a screen.

134 S. Ct. 2473, 2491 (2014) (citation omitted).

The Court then addressed the government's proposal that cell phone searches incident to arrest be analyzed under the *Gant* standard imported from the vehicle context:

> [A] *Gant* standard would prove no practical limit at all when it comes to cell phone searches.  In the vehicle context, *Gant* generally protects against searches for evidence of past crimes.  In the cell phone context, however, it is reasonable to expect that incriminating information will be found on a phone regardless of when the crime occurred. . . . The sources of potential pertinent information are virtually unlimited, so applying the *Gant* standard to cell phones

would in effect give police officers unbridled discretion to rummage at will among a person's private effects.

*Id*. at 2492 (internal quotation marks omitted).

Given the Court's extensive analysis of cell phones as "containers" and cell phone searches in the vehicle context, we find no reason not to extend the reasoning in *Riley* from the search incident to arrest exception to the vehicle exception. Just as "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person," so too do cell phones differ from any other object officers might find in a vehicle. *Id.* at 2489. Today's cell phones are unlike any of the container examples the Supreme Court has provided in the vehicle context. Whereas luggage, boxes, bags, clothing, lunch buckets, orange crates, wrapped packages, glove compartments, and locked trunks are capable of physically "holding another object," *see Belton*, 453 U.S. at 460 n.4, "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse," *Riley*, 134 S. Ct. at 2488–89. In fact, "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house." *Id*. at 2491 (emphasis in original).

We further note that the privacy intrusion of searching a cell phone without a warrant is of particular concern in the vehicle exception context because the allowable scope of the search is broader than that of an exigency search, or a search incident to arrest. Whereas exigency searches are circumscribed by the specific exigency at hand and searches incident to arrest are limited to areas within the arrestee's

immediate control or to evidence relevant to the crime of arrest, vehicle exception searches allow for evidence relevant to criminal activity broadly. If cell phones are considered containers for purposes of the vehicle exception, officers would often be able to sift through all of the data on cell phones found in vehicles because they would not be restrained by any limitations of exigency or relevance to a specific crime.

We therefore conclude that cell phones are *non*-containers for purposes of the vehicle exception to the warrant requirement, and the search of Camou's cell phone cannot be justified under that exception.

## III.     Inevitable Discovery and the Good Faith Exceptions to the Exclusionary Rule

The government argues that, even if the warrantless search of Camou's cell phone was unconstitutional, the photographs found as a result of the search should not be suppressed because the inevitable discovery and good faith exceptions to the exclusionary rule are met. We disagree with the government and find that neither exception is met.

### A.  Inevitable Discovery

The exclusionary rule allows courts to suppress evidence obtained as a result of an unconstitutional search or seizure. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Weeks v. United States*, 232 U.S. 383, 393 (1914). But if the government can establish by a preponderance of the evidence that the unlawfully obtained information "ultimately or inevitably would have been discovered by lawful means," the exclusionary rule will not apply. *Nix v. Williams*, 467 U.S.

431, 444 (1984). We have "never applied the inevitable discovery exception so as to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant." *United States v. Young*, 573 F.3d 711, 723 (9th Cir. 2009) (quoting *United States v. Mejia*, 69 F.3d 309, 320 (9th Cir. 1995)). As we reasoned in *Mejia*, "[i]f evidence were admitted notwithstanding the officers' unexcused failure to obtain a warrant, simply because probable cause existed, then there would never be *any* reason for officers to seek a warrant." 69 F.3d at 320.

Here, the government argues that a warrant to search Camou's cell phone for evidence of smuggling activity inevitably would have been sought and approved, and therefore that the inevitable discovery doctrine applies. This argument fails for two independent reasons.

First, the government has not proved by a preponderance of the evidence that it would have applied for a warrant to search Camou's phone for evidence of alien smuggling activity. In fact, the record points to the opposite conclusion: that no search warrant would have been sought and thus that no search warrant would have been approved. Camou was ultimately charged only with possession of child pornography, not with alien smuggling. Border Patrol agents knew the day Agent Walla searched Camou's cell phone that Camou would not be charged with alien smuggling. The Sector Prosecutions Office informed the agents that day that "prosecution was declined" in the smuggling case against Camou because the case "did not meet prosecution guidelines." Because the reasonable conclusion from the record is that no search warrant would have been sought, the

inevitable discovery exception to the exclusionary rule is not satisfied.

Second, and more importantly, *Mejia* governs this case. By asking this court to conclude that the inevitable discovery exception applies here because a search warrant would have issued, the government is asking us to "excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant." *Mejia*, 69 F.3d at 320. Under *Mejia*, this is impermissible and the inevitable discovery exception to the exclusionary rule is not satisfied.

## B. Good Faith

When the officer executing an unconstitutional search acted in "good faith," or on "objectively reasonable reliance," the exclusionary rule does not apply. *See United States v. Leon*, 468 U.S. 897, 922 (1984). The burden of demonstrating good faith rests with the government. *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995). The test for good faith is an objective one: "whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." *United States v. Herring*, 555 U.S. 135, 145 (2009) (internal quotation marks omitted).

In *Herring*, the Supreme Court applied the good faith exception to an officer's arrest and search incident to arrest of the defendant. The Court held that the officer had reasonably relied on the county clerk's assertion that the defendant had an active arrest warrant. *Id.* at 149–50. The clerk based her assertion on another law enforcement employee's negligent bookkeeping entry, which falsely indicated that the defendant had an active arrest warrant. *Id.* In holding that the good

faith exception applied, the Court reasoned that "the error was the result of isolated negligence attenuated from the arrest" and that "an error that arises from nonrecurring and attenuated negligence is . . . far removed from the core concerns that led us to adopt the rule in the first place." *Id.* at 138, 144. The Court further stated that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144.

We conclude the good faith exception does not apply here. The governing law at the time of the search made clear that a search incident to arrest had to be contemporaneous with the arrest. *See, e.g.*, *United States v. Hudson*, 100 F.3d 1409, 1419 (9th Cir. 1996). The government has not met its burden to prove that a reasonably well-trained officer in Agent Walla's position could have believed that the search of Camou's cell phone one hour and 20 minutes after Camou's arrest was lawful. The government does not advance any arguments except that in searching the phone Agent Walla was not acting "through 'reckless or deliberate' officer misconduct," and that *Herring* controls.

But *Herring* is distinguishable. *Herring* dealt with an officer's reliance on a county clerk's assertion that the defendant had an outstanding warrant, which was in turn based on another law enforcement employee's negligence. The officer was not negligent himself; the negligence was two degrees removed from the officer and thus amounted to "isolated negligence attenuated from the arrest." 555 U.S. at 137. In *Herring*, as in its prior good faith jurisprudence, the Supreme Court found the good faith exception was met because the officer *reasonably relied on* an external source,

which turned out to be erroneous. *Id.*; *see also Arizona v. Evans*, 514 U.S. 1, 14 (1995) (holding that good faith exception was met where police reasonably relied on erroneous information concerning an arrest warrant in a database maintained by judicial employees); *Illinois v. Krull*, 480 U.S. 340, 358–60 (1987) (extending good faith exception to searches conducted in reasonable reliance on subsequently invalidated statutes); *Leon,* 468 U.S. at 922 (holding that the officer's reasonable reliance on a warrant later held to be invalid met the good faith exception).

The Supreme Court has never applied the good faith exception to excuse an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights.[3] Here, the government fails to assert that Agent Walla relied on anyone or anything in conducting his search of Camou's cell phone, let alone that any reliance was reasonable. The government instead only asserts that by searching the phone, Agent Walla was not acting "recklessly[,] or deliberately" misbehaving. In this case, the good faith exception cannot apply.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's denial of Camou's motion to suppress.

---

[3] In fact, because "objectively reasonable" and "negligent" are mutually exclusive, the only way to reconcile the "objectively reasonable reliance" rule established in *Leon* with *Herring* is to conclude that the officer who executed the unconstitutional search or seizure cannot have been the negligent actor. *Herring* should be read as holding instead that when an officer reasonably relies on incorrect information that was the result of *another* individual's "isolated" and "attenuated" negligence, the good faith exception applies.