NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 22 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-1373 |
| Plaintiff - Appellee, | D.C. No. 3:21-cr-03101-JLS-1 |
| v. | |
| JOHN THOMAS FENCL, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted March 3, 2026
Pasadena, California

Before: WARDLAW and DE ALBA, Circuit Judges, and BROWN, District Judge.**

John Thomas Fencl was convicted of three counts of knowingly possessing

unregistered short-barreled rifles and four counts of knowingly possessing

unlawful firearm silencers. He appeals both the district court's denial of his

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Jeffrey Vincent Brown, United States District Judge for the Southern District of Texas, sitting by designation.

motion to suppress evidence and his conviction. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The district court did not err in denying Fencl's motion to suppress evidence found during the search of his home. "We review a 'district court's rulings on motions to suppress,' including applications of the good faith exception to the exclusionary rule, . . . '*de novo*,'" and factual findings for clear error. *United States v. Barnes*, 895 F.3d 1194, 1199 (9th Cir. 2018) (quoting *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013)). Here, both parties agree that officers searched Fencl's home without a warrant or other exigent circumstances sufficient to justify the search. But, even assuming a Fourth Amendment violation took place, the exclusionary rule does not apply necessarily apply here. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). Accordingly, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence," but not mere isolated negligence. *Id.*

The district court properly applied the good faith exception to the exclusionary rule. "[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known

that the search was illegal." *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984). Detective White made multiple attempts to confirm Fencl's probationary status: he checked the police department database which indicated that Fencl was still on probation; he followed his department's policy and contacted the probation office to confirm that Fencl was still on probation; and his partner called the City Attorney's Office and an attorney from the office stated that Fencl was still on probation. While all three sources provided factually incorrect information to Detective White, "the good faith exception" can apply to an officer who "*reasonably relied on* an external source, which turned out to be erroneous." *United States v. Camou*, 773 F.3d 932, 945 (9th Cir. 2014). Here, Detective White took the extra step of checking multiple sources to confirm the accuracy of the external sources he relied upon. In these circumstances, the government has established that any mistakes did not rise to the level of gross negligence required for application of the exclusionary rule.

Fencl argues that the police "database contained systemic errors," and therefore the good faith exception should not apply. The Supreme Court has explained that "[i]n a case where systemic errors were demonstrated, it might be reckless for officers to rely on an unreliable" database. *Herring*, 555 U.S. at 146. But, here, there is "no evidence" that errors in the police database system were "routine or widespread." *Id.* at 147; *see also Arizona v. Evans*, 514 U.S. 1, 15

(1995) (holding that reliance on a database to be objectively reasonable even though it was erroneous and a similar "error occurred once every three or four years"). To the contrary, the El Cajon Police Department worked with the Probation Department to implement Assembly Bill 1950 and notified officers of the change in law. Moreover, Detective White mitigated the risk of any errors in the police database by making multiple efforts to confirm the information through checking other sources.

2. The district court's jury instructions, and the prosecutor's closing argument remarks, do not require reversal. "We review de novo whether the Government's theory of [guilt] at trial was legally valid." *United States v. Milheiser*, 98 F.4th 935, 941 (9th Cir. 2024). "A prosecutor's misstatements of law during closing argument" may also "provide grounds for reversal." *United States v. Velazquez*, 1 F.4th 1132, 1136 (9th Cir. 2021). While there is a "potential intra-circuit conflict on the standard of review for challenges to prosecutorial comments," specifically whether that standard of review is de novo or for an abuse of discretion, we need not resolve this issue because "we reach the same conclusion under either standard of review." *Id.* at 1137.

Neither the definition of a rifle nor the definition of a silencer requires proof of subjective intent. A short-barreled rifle is "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c).

In similar contexts, we have held that intended use "turns solely on an *objective* inquiry into the article's likely use in light of its features and any accompanying labeling," rather than a subjective inquiry into the manufacturer's or user's intent. *United States v. Marschall*, 82 F.4th 774, 780 (9th Cir. 2023); *see also Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 519–22 (1994) (holding that the phrase "primarily intended . . . for use" refers to an item's likely use as an objective matter, rather than the subjective intent of the item's buyer or seller).

The definition of a silencer also does not require proof of subjective intent. A silencer includes "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler." 18 U.S.C.A. § 921(a)(25). Just as in the rifle definition, the phrase "intended for use" refers to an objective inquiry related to the object's likely use, rather than a subjective inquiry into the manufacturer's or user's state of mind.

Moreover, even if either the rifle or silencer definition required proof of subjective intent, any error in failing to give such an instruction was harmless beyond a reasonable doubt. *See United States v. Perez*, 962 F.3d 420, 441 (9th Cir. 2020). The district court judge instructed the jury on the relevant definitions of both rifles and silencers but did not explain whether either definition required subjective intent. In closing argument, the prosecutor argued that the three short-

barreled rifles were intended to be fired from the shoulder because of the presence of a "shoulder stock"; because "the length of pull for each of these is a rifle length of pull, meaning that they were all intended or designed with a length of pull to be braced against your shoulder"; and because they each had "rifle sights." The prosecutor further argued that Fencl "lied" when he stated that he did not intend to shoot the three rifles from the shoulder. Moreover, the prosecutor maintained that Fencl's statement that the silencers had "an automotive purpose" was not credible, because the evidence established that the only purpose for the four charged objects was to be used as silencers. In light of the substantial evidence that Fencl subjectively intended to use the charged items as rifles and silencers and the prosecutor's arguments that Fencl's statements to the contrary were untruthful, any errors in the jury instructions defining the offenses, or in the prosecutor's statements during closing argument, were harmless beyond a reasonable doubt.

**AFFIRMED**.